## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                      No. CR 20-1221 JB

HUMBERTO GARCIA-GARCIA,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff United States' Objection to the Presentence Report, filed July 7, 2021 (Doc. 39)("Objection"). The primary issue is whether the Court should convert $4,000.00 in cash that arresting officers found in Defendant Humberto Garcia-Garcia's vehicle to 66.66 grams of methamphetamine, which would raise Garcia-Garcia's base offense level from 16 to 30 under United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(a)(5), (c)(5), because Plaintiff United States of America states that it will not present evidence necessary to satisfy its burden to convert the cash to drugs. The Court will not convert the $4,000.00 in cash to 66.66 grams of methamphetamine, because the preponderance of the evidence does not show that the cash is attributable to the sale of methamphetamine. Accordingly, the Court sustains the United States' Objection.

## FACTUAL BACKGROUND

The Court takes its facts from the Presentence Investigation Report, filed June 4, 2021 (Doc. 43)("PSR"). The Court makes its findings of fact by a preponderance of the evidence. United States v. Williams, No. CR. 17-2556 JB, 2020 WL 4016108, at *6 (D.N.M. July 16, 2020)(Browning, J.)(citing United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)). Accord

United States v. Zapata, 546 F.3d 1179, 1192 (10th Cir. 2008). The Court may rely on hearsay if the hearsay is reliable.   See United States v. Banda, 168 F. App'x 284, 289 (10th Cir. 2006)("[T]there is no prohibition on considering hearsay testimony at sentencing, provided it bears indicia of reliability.").[1]   The evidence and information upon which the Court relies must have sufficient indicia of reliability.   See U.S.S.G. § 6A1.3 ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

### 1.   __Officers Detain and Later Arrest Garcia-Garcia.__

1.      On December 7, 2019, a Bosque Farms Police Department officer, while traveling southbound on the four-lane New Mexico highway 47, in Valencia County, New Mexico, saw a black Mercedes sedan in front of his patrol vehicle traveling in the left lane.   See PSR ¶ 11, at 5.

2.      As the officer followed behind the Mercedes, the officer watched the vehicle swerve over the center marked lane divider three separate times.   See PSR ¶ 11, at 5.

3.      The officer then stopped the vehicle, approached the vehicle, and noticed that the

---

[1]United States v. Banda is an unpublished opinion, but the Court can rely on an unpublished opinion from the United States Court of Appeals for the Tenth Circuit to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent. . . .   And we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).   The Court concludes that United States v. Banda has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

driver, Garcia-Garcia, had a twenty-ounce Modelo beer between his legs.  See PSR ¶ 12, at 5.

4.  Garcia-Garcia had bloodshot watery eyes and he admitted to consuming alcohol earlier in the day.  See PSR ¶ 12, at 5.

5.  The officer then asked Garcia-Garcia to step out of the vehicle.  See PSR ¶ 12, at 5.

6.  As Garcia-Garcia opened the door, the officer saw a handgun protruding from underneath the driver's seat and a white clear baggie containing a white crystal substance in the pocket of the driver's side door partially concealed.  See PSR ¶ 12, at 5.

7.  The officer then detained Garcia-Garcia.  See PSR ¶ 12, at 5.

8.  Another officer arrived on scene.  See PSR ¶ 13, at 5.

9.  Garcia-Garcia stated that he was not feeling well, so the officers requested an ambulance.  See PSR ¶ 13, at 5.

10.  Dispatch told the officers that Garcia-Garcia's license had been revoked.  See PSR ¶ 13, at 5.

11.  As one of the officers was photographing the items the first officer had found in the vehicle, Garcia-Garcia, who was handcuffed, started to run away.  See PSR ¶ 13, at 5.

12.  The officers chased Garcia-Garcia on foot.  See PSR ¶ 13, at 5.

13.  Garcia-Garcia then fell, and the officers detained him after a brief struggle.  See PSR ¶ 13, at 5.

14.  After the officers asked Garcia-Garcia why he decided to run, Garcia-Garcia said: "I have a wife and kid, I want to see them."  PSR ¶ 14, at 5.

15.  Medical personnel arrived on scene and treated Garcia-Garcia for injuries sustained during the fall.  See PSR ¶ 14, at 5.

16.     Garcia-Garcia was transported to a hospital, where nursing staff found a one dollar bill inside his pants with a white powdery substance.  See PSR ¶ 14, at 6.

17.     After medical personnel discharged Garcia-Garcia, he was arrested.  See PSR ¶ 14, at 6.

**2.     The Inventory Search of Garcia-Garcia's Vehicle.**

18.     Officers conducted an inventory of Garcia-Garcia's vehicle, and found: (i) one white bag of suspected methamphetamine in the driver's door; (ii) one .40 caliber handgun, loaded, underneath the driver's seat; (iii) twelve rounds in an extended thirty-round magazine inserted in the .40 caliber handgun under the driver's seat; (iv) unknown pills; (v) $4,000.00 cash in the glove compartment; (vi) a backpack near the center console containing one scale and 150 small plastic baggies; (vii) about 1.9 grams of suspected marijuana in the backseat; (viii) three driver's licenses; (ix) two social security cards; and (x) two cellular phones.  See PSR ¶¶ 15-16, at 6.

19.     A Drug Enforcement Administration ("DEA") lab report shows that the white substance discovered in the inventory tested consisted of 12.2 grams of methamphetamine (actual).  See PSR ¶ 16, at 6.

20.     Officers performed a field test on the marijuana revealing a weight of 1.9 ounces.  See PSR ¶ 16, at 6.

21.     According to the New Mexico Investigative Support Center and the Southwest Border High-Intensity Drug Trafficking Areas, which track the local market value for drugs, one gram of methamphetamine (actual) in the Albuquerque, New Mexico is worth $60.00.  See PSR ¶ 16, at 6.

22.     On February 20, 2020, a Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") agent examined the firearm that the officers found in Garcia-Garcia's vehicle and

identified it as a .40 caliber Taurus PT-140 handgun, serial number SVB 52180.  PSR ¶ 17, at 6.

23.     On January 21, 2020, the ATF conducted an eTrace,[2] which showed that the firearm was not manufactured in New Mexico, was registered to an individual who was not Garcia-Garcia, and was sold in Artesia, New Mexico.  See PSR ¶ 17, at 6.

24.     Neither ATF nor Artesia Police Department records indicate whether the firearm was stolen.  See PSR ¶ 17, at 6.

**3.     Garcia-Garcia's Statements.**

25.     On February 24, 2020, Garcia-Garcia provided a statement to Department of Homeland Security Investigations ("HSI") officers.  PSR ¶ 18, at 6.

26.     Before his arrest, Garcia-Garcia had sold a truck to Jesse Hernandez, who was later arrested in Hobbs Act robbery, New Mexico and the vehicle was impounded.  See PSR ¶ 18, at 6.

27.     Garcia-Garcia and his brother drove to Hobbs to pick up the truck from impound, and, upon picking up the truck, Garcia-Garcia's brother found a black bag in the truck that contained drugs.  See PSR ¶ 18, at 6.

28.     Garcia-Garcia's brother told him to place the drugs in his car and hold them for Hernandez.  See PSR ¶ 18, at 6.

29.     While cleaning the truck, Garcia-Garcia found a gun and placed the gun in his

---

[2]The ATF website states:

> eTrace (Electronic Tracing System) is an internet-based system that allows participating law enforcement agencies to submit firearm traces to the ATF National Tracing Center (NTC).  Authorized users can receive firearm trace results via this same internet web site, search a database of all firearm traces submitted by their individual agency, and perform analytical functions.

eTrace 4.0, Bureau of Alcohol, Tobacco, Firearms and Explosives, available at https://etrace.atf.gov/etrace/logon.do (last visited August 4, 2021).

vehicle to hold for Hernandez.  See PSR ¶ 18, at 6.

30.    Garcia-Garcia described the methamphetamine to be eight grams, and admitted that he knew it was illegal to possess both drugs and a weapon.  See PSR ¶ 18, at 6.

4.    **Garcia-Garcia's Employment History.**[3]

31.    At the time Garcia-Garcia was arrested on December 7, 2019, he had been employed full-time as a construction worker earning $15.00 an hour since June 1, 2019.  See PSR ¶ 59, at 13.

32.    From January 1, 2019, until May 31, 2019, Garcia-Garcia worked full time as a farmer for Engineered Foundation System.  See PSR ¶ 60, at 13.

33.    From January 1, 2015, until January 1, 2019, Garcia-Garcia worked full time as a construction worker.  See PSR ¶ 61, at 13-14.

34.    From January 1, 2014, until December 31, 2014, Garcia-Garcia worked full time "making marble before leaving to another position, on average of 30-40 hours a week, earning on average $11.25 hourly."  PSR ¶ 62, at 14.

## PROCEDURAL BACKGROUND

A grand jury indicted Garcia-Garcia in May, 2020.  See Indictment, filed May 12, 2020 (Doc. 8).  In September, 2020, Garcia-Garcia pleaded guilty to: (i) violating of "21 U.S.C. §§ 841(a)(l) and (b)(l)(C), that being Possession with Intent to Distribute a Mixture and Substance Containing Methamphetamine"; and (ii) violating "18 U.S.C.§ 924(c)(l)(A)(i) that being Using and Carrying a Firearm During and in Relation to a Drug Trafficking Crime, and Possessing a

---

[3]The USPO, in the PSR, states that Garcia-Garcia worked thirty to forty hours a week at each place of employment since 2014.  PSR ¶ 63, at 14.  The USPO also reports, however, that "[h]e often worked construction with many periods of unemployment."  PSR ¶ 63, at 14.  The PSR does not indicate when those period of employment occurred, so the Court reports Garcia-Garcia's employment as the PSR lists.

Firearm in Furtherance of Such Crime." Plea Agreement at 2, filed September 3, 2020 (Doc. 25)("Plea"). In return for his plea, the parties agree, pursuant to rule 11(c)(1)(C) of the Federal Rule of Criminal Procedure, to a sentence of 72 months imprisonment. See Plea at ¶ 14, at 7.

1. **The PSR**.

The United States Probation Office ("USPO") calculates that Garcia-Garcia's base offense level is 30 under U.S.S.G. § 2D1.1(a)(5). PSR ¶ 25, at 8. The USPO calculates a base offense level of 30 according to § 2D1.1(c)(5)'s table, by converting the $4000.00 cash seized to 66.66 grams of methamphetamine and adding that amount to the 12.2 grams of methamphetamine the Bosque Farm officers had seized, for a total of 88.86 grams of methamphetamine. See PSR ¶¶ 25, 85 at 8, 17. The USPO subtracted 3 levels for Garcia-Garcia's acceptance of responsibility. See PSR ¶¶ 32-33, at 8. The USPO calculates that Garcia-Garcia's total offense level is 27. See PSR ¶ 34, at 8.

2. **The Objection**.

Garcia-Garcia filed a Sentencing Memorandum on December 31, 2020 (Doc. 3), stating:

> The Office of the United States Attorney has correctly assessed the evidence and legal issues in this case, the nature and circumstances of the offense, and the history and characteristics of the Defendant together with the purposes of sentencing set forth in 18 U.S.C. 3553(a)(2) and has determined that the interests of the United States would be vindicated by imposition of the agreed upon sentence of seventy-two (72) months imprisonment.

Sentencing Memorandum at 1. On January 7, 2021, the United States objects to the USPO's calculation. See Objection at 1. The United States argues that it cannot satisfy its burden at sentencing to show that, by preponderance of the evidence, the cash the officers found in Garcia-Garcia's vehicle is attributable to drug sales. See Objection at 2. The United States argues:

> The United States is not in possession of evidence sufficient to support a finding that the cash located on Defendant at the time of his arrest is attributable to drug sales of methamphetamine. The United States is unable to prove that the cash located in the vehicle was obtained via illicit means, much less that it was obtained

from the trafficking of methamphetamine.  The United States affirms that it will not proffer nor present evidence necessary to satisfy the preponderance of the evidence burden necessary to convert the currency to additional methamphetamine for purposes of sentencing.

Objection at 3.  The United States contends, therefore, that the Court should use the 12.2 grams of methamphetamine, and not 88.8 grams of methamphetamine "to calculate the base offense level for Count 1 of the Indictment."  Objection at 3.  The United States contends that, using 12.2 grams of methamphetamine, Garcia-Garcia's base offense level is 16, and, after applying the 3-level reduction for acceptance of responsibility, Garcia-Garcia's offense level is 13, with a Guideline range of 12 to 18 months for Count 1.  See Objection at 4.  The United States explains that Garcia-Garcia "also faces 60-month statutorily mandated consecutive sentence for his conviction under 18 U.S.C. 924(c).  As such, the United States believes the appropriate guideline range for this offense is 72-78 months."  Objection at 4.

**3.      The Second PSR Addendums.**

In the Addendum to the Presentence Report, filed March 26, 2021 (Doc. 34)("PSR Add. I"), the USPO states that it will not change the guideline range, despite the United States' Objection, because "Discovery page 3 indicates the $4,000 in United States currency was in close proximity to the 12.2 grams of methamphetamine (actual) found in the vehicle. Based on the evidence collected from the vehicle and the defendant's person, case agents believe the money seized was likely obtained through drug sales."  PSR Add. I at 1.  Then in the Second Addendum to the Presentence Report, filed August 3, 2021 (Doc. 42)("PSR Add. II"), the USPO states the $4,000.00 was "in close proximity to the 12.2 grams of methamphetamine (actual) found in the vehicle," and, because the "case agents believe the money seized was likely obtained through drug sales," the USPO will not change its calculation.  See PSR Add. II at 1.  The USPO states that it believes the "monies were likely obtained from the proceeds of methamphetamine (actual) sales,"

because the officers found "the backpack containing a scale and 150 small plastic baggies located near the center console, the amount of methamphetamine (actual) located in the driver's door, the two cellular phones, and the $4,000.00 in U.S. currency located in the glove compartment."  PSR Add. II at 2.  The USPO calculates that the "sentencing range is 157 months to 181 months" for the two counts, but that "in consideration of 18 U.S.C[.] § 3553(a)(1)-(7), a sentence of 72 months imprisonment pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure plea agreement may be warranted in this case."  See PSR Add. II at 2.

## RELEVANT LAW REGARDING THE GUIDELINES

Section 2K2.1(b)(6)(B) provides for a 4-level enhancement "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6)(B).  "[A]nother felony offense" "means any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained."  U.S.S.G. § 2K2.1 cmt. 14(C).  See United States v. Gross, No. CR 16-0454 JB, 2016 WL 9021829, at *15 (D.N.M. Dec. 16, 2016)(Browning, J.)("An enhancement under § 2K2.1(b)(6) may be applied even though the felony in connection with which the firearm is possessed was not an offense for which the defendant was convicted."  (citing United States v. Gambino-Zavala, 539 F.3d 1221, 1230 n.3 (10th Cir. 2008))).  Application note 14(A) to U.S.S.G. § 2K2.1 specifies that the use or possession is "in connection with" another felony offense "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense."  U.S.S.G. § 2K2.1 cmt. 14(A).  The United States Court of Appeals for the Tenth Circuit has explained: "The plain and commonly understood meaning of 'facilitate' is to make easier."  United States v. Marrufo, 661 F.3d 1204,

1207 (10th Cir. 2011).   See United States v. Serna, 405 F. Supp. 3d 1107, 1110 (D.N.M. 2019)(Browning, J.).

An enhancement under U.S.S.G. § 2K2.1(b)(6) may be applied even though the felony in connection with which the firearm is possessed was not an offense for which the defendant was convicted.   See United States v. Gambino-Zavala, 539 F.3d at 1230 n. 3.   In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that, even after United States v. Booker, 543 U.S. 220 (2005), as long as the guidelines are considered advisory, facts relevant to sentencing still need be proved only by a preponderance of the evidence.   See United States v. Magallanez, 408 F.3d at 684-85.   See also United States v. Dalton, 409 F.3d 1247, 1252 (10th Cir. 2005)("[United States v.]Booker therefore does not render judicial factfinding by a preponderance of the evidence per se unconstitutional.").

The 4-level enhancement has four distinct elements, and "[t]he United States must prove that the defendant: (i) used or possessed; (ii) any firearm or ammunition; (iii) in connection with; (iv) another felony offense."   United States v. Kepler, No. CR. 11-1946 JB, 2012 WL 592422, at *5 (D.N.M. Feb. 14, 2012)(Browning, J.)(citing U.S.S.G. § 2K2.1(b)(6)).   In United States v. Kepler, the United States and the defendant stipulated that § 2K2.1(b)(6)'s 4-level enhancement did not apply, and the Court accepted the stipulation, because there was a lack of evidence regarding whether the defendant or some other occupant in the house owned the locked box that contained methamphetamine and a handgun.   See United States v. Kepler, 2012 WL 592422, at *6.   The Court explained:

> Given that the Court has no ability to gather or present evidence to support a sentencing enhancement, the Court is dependent in many ways on the United States to assess the strength of its arguments and evaluate whether it can prove that a particular enhancement applies. While it is possible that the methamphetamine is attributable to Kepler, the evidence before the Court does not support a factual finding to that effect by a preponderance of the evidence. Without proof that Kepler

committed another felony offense, the United States cannot establish that an enhancement under U.S.S.G. § 2K2.1(b)(6) applies.

United States v. Kepler, 2012 WL 592422, at *6.  See United States v Pacheco, No. CR 13-2643

JB, 2014 WL 3421063, at *7 (D.N.M. July 8, 2014)(Browning, J.).

### LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court of the United States reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute." 530 U.S. at 481.  The Supreme Court cautioned, however, that the Constitution of the United States of America limits this discretion and its Sixth Amendment requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. at 490.  In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in Apprendi v. New Jersey, stating that the "'statutory maximum' for Apprendi[v. New Jersey] purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, 542 U.S. at 303 (emphasis and citations omitted).  Apprendi v. New Jersey does not, however, "apply to the present advisory-Guidelines regime," because the sentencing guidelines are no longer mandatory.  United States v. Ray, 704 F.3d 1307, 1314 (10th Cir. 2013)(citing United States v. Booker, 543 U.S. 220, 259 (2005)).  More recently, the Supreme Court held that Apprendi v. New Jersey's requirements apply to facts that increase a defendant's mandatory minimum sentence.  See Alleyne v. United States, 570 U.S. 99 (2013).

In <u>United States v. Magallanez</u>, 408 F.3d at 672, the Tenth Circuit held that <u>Blakely v. Washington</u> and <u>United States v. Booker</u> do not change the district court's enhancement findings analysis.  <u>See</u> <u>United States v. Magallanez</u>, 408 F.3d at 684-85.  <u>United States v. Magallanez</u> involved plain-error review of a drug sentence in which a jury found the defendant guilty of conspiracy to possess with intent to distribute, and to distribute, methamphetamine.  <u>See</u> 408 F.3d at 676.  As part of its verdict, the jury, through a special interrogatory, attributed to the defendant 50-500 grams of methamphetamine; at sentencing, however, the judge -- based on testimony of the various amounts that government witnesses indicated they had sold to the defendant -- attributed 1200 grams of methamphetamine to the defendant and used that amount to increase his sentence under the Guidelines.  <u>See</u> 408 F.3d at 682.  The district court's findings increased the defendant's Guidelines sentencing range from 63 to 78 months up to 121 to 151 months. <u>See</u> 408 F.3d at 682-83.  On appeal, the Tenth Circuit stated that, both before and after Congress' passage of the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-86, "sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict."  <u>United States v. Magallanez,</u> 408 F.3d at 684.  Although <u>United States v. Booker</u> made the Guidelines ranges "effectively advisory," the Tenth Circuit reaffirmed that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before." <u>United States v. Magallanez</u>, 408 F.3d at 685 (citation omitted).

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance."  <u>United States v. Olsen</u>, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting <u>United States v. Washington</u>, 11

F.3d 1510, 1516 (10th Cir. 1993)).  "[T]he application of an enhancement . . . does not implicate the Supreme Court's holding in Apprendi v. New Jersey."  United States v. Reyes-Vencomo, 2012 WL 2574810, at *3 (D.N.M. 2012)(Browning, J.).  The Tenth Circuit applies Apprendi v. New Jersey's requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction." United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005).  Accord United States v. Ray, 704 F.3d at 1314.  A defendant may assert an error under Apprendi v. New Jersey only where the fact at issue increased his sentence beyond the statutory maximum.  See United States v. O'Flanagan, 339 F.3d 1229, 1232 (10th Cir. 2003)(holding that a defendant could not assert an error under Apprendi v. New Jersey, because "his sentence does not exceed the statutory maximum"); United States v. Hendrickson, 592 F. App'x. 699, 705 (10th Cir. 2014)(unpublished)(holding that, after Alleyne v. United States, "[i]t is well-established that sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence").[4] The Court has noted:

> [A]lthough the decision of the Supreme Court of the United States in Alleyne v. United States, 133 S. Ct. 2151 (2013), expands the rule from Apprendi v. New Jersey, 530 U.S. 466 (2000)(holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence.

United States v. Cervantes-Chavez, 2014 WL 6065657, at *14 (D.N.M. 2014)(Browning, J.)(citing

---

[4]United States v. Brown is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A).  The Court concludes that United States v. Schmidt, United States v. Banda, and United States v. Hendrickson have persuasive value with respect to a material issue and will assist the Court in its disposition of this Memorandum Opinion and Order.

United States v. Sangiovanni, 2014 WL 4347131, at *22-26 (D.N.M. 2014)(Browning, J.)).

In United States v. Ulibarri, 115 F. Supp. 3d 1308 (D.N.M. 2015)(Browning, J.), the Court considered the United States' assertion that the defendant deserved 8 additional offense levels for threatening to cause physical injury to a person to obstruct justice.  See 115 F. Supp. 3d 1336-37 (citing U.S.S.G. § 2J1.2(b)(1)(B)).  The Court stated that, for the offense levels to apply:

> The United States must prove two elements by a preponderance of the evidence.  First, [the defendant's] offense must involve "threatening to cause physical injury to a person." U.S.S.G. § 2J1.2(b)(1)(B).  This element requires that the defendant] "communicate[d an] intent to inflict [physical injury] on another[.]" Black's Law Dictionary 1618. . . .  Second, the defendant] must have made that threat "in order to obstruct the administration of justice."  U.S.S.G. § 2J1.2(b)(1)(B).

United States v. Ulibarri, 115 F. Supp. 3d at 1336 (first two alterations in United States v. Ulibarriu; third alteration added).  The Court determined that, although the United States showed that the defendant "communicated an intent to inflict physical injury" on someone, the United States failed to prove, by a preponderance of the evidence, that the defendant "did so to obstruct the administration of justice."  115 F. Supp. 3d at 1336.  The Court concluded that, because the United States did not meet its burden on this second element, it would not impose the additional 8 offense levels under U.S.S.G. § 2J1.2(b)(1)(B).  See United States v. Ulibarri, 115 F. Supp. 3d at 1336.

## LAW REGARDING RELEVANT CONDUCT FOR SENTENCING

In calculating an appropriate sentence, the Guidelines consider a defendant's "offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." U.S.S.G. § 1B1.1, n.1(H).  In United States v. Booker, the Supreme Court notes:

> Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the real conduct that underlies the crime of conviction. That determination is particularly important in the federal system where crimes defined

as, for example, "obstruct[ing], delay[ing], or affect[ing] commerce or the movement of any article or commodity in commerce, by . . . extortion," . . . can encompass a vast range of very different kinds of underlying conduct.

543 U.S. at 250-51 (emphasis in original)(quoting 18 U.S.C. § 1951(a)). The Supreme Court's reasoning in United States v. Booker suggests that the consideration of real conduct is necessary to effectuate Congress' purpose in enacting the Guidelines.

Section 1B1.3(a) provides that the base offense level under the Guidelines "shall be determined" based on the following:

> (1)
>
> (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;
>
> (2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;
>
> (3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and
>
> (4) any other information specified in the applicable guideline.

U.S.S.G. § 1B1.3(a)(1)-(4).  The court may consider, as relevant conduct, actions that have not resulted in a conviction.  Pursuant to U.S.S.G. § 6A1.3's commentary, evidentiary standards lower than beyond a reasonable doubt are permitted to show relevant conduct.  The court may rely upon reliable hearsay, so long as the evidence meets the preponderance-of-the-evidence standard.  See

United States v. Vigil, 476 F. Supp. 2d 1231, 1245 (D.N.M. 2007)(Browning J.), aff'd, 523 F.3d 1258 (10th Cir. 2008).   Accord United States v. Schmidt, 353 F. App'x. 132, 135 (10th Cir. 2009)(unpublished)("The district court's determination of 'relevant conduct' is a factual finding subject to a preponderance of the evidence standard, and clear error review.").   The evidence and information upon which the court relies, however, must have sufficient indicia of reliability.   See U.S.S.G. § 6A1.3 ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

Supreme Court precedent on relevant conduct consists primarily of two cases: Witte v. United States, 515 U.S. 389 (1995), and United States v. Watts, 519 U.S. 148 (1997).   In Witte v. United States, the Supreme Court upheld the use of uncharged conduct at sentencing against a double-jeopardy challenge.   See 515 U.S. at 404-06.   The defendant in Witte v. United States had been involved in an unsuccessful attempt to import marijuana and cocaine into the United States in 1990, and in an attempt to import marijuana in 1991.   See 515 U.S. at 392-93.   In March 1991, a federal grand jury indicted the defendant for attempting to possess marijuana with intent to distribute in association with the defendant's latter attempt to import narcotics.   See 515 U.S. at 392-93.   At sentencing, the district court concluded that, because the 1990 attempt was part of the continuing conspiracy, it was relevant conduct under U.S.S.G. § 1B1.3, and thus calculated the defendant's base offense level based on the aggregate amount of drugs involved in both the 1990 and 1991 episodes.   See 515 U.S. at 394.

In September, 1992, a second federal grand jury indicted the defendant for conspiring and attempting to import cocaine in association with his activities in 1990.   See 515 U.S. at 392-93.

The defendant moved to dismiss the indictment, contending that he had already been punished for the cocaine offenses, because the court had considered those offenses relevant conduct at the sentencing for the 1991 marijuana offense.  See 515 U.S. at 395.  The district court agreed and dismissed the indictment, holding that punishment for the cocaine offenses would violate the prohibition against multiple punishments in the Double Jeopardy Clause of the Fifth Amendment to the Constitution.  See 515 U.S. at 395.  The United States Court of Appeals for the Fifth Circuit reversed and held that "the use of relevant conduct to increase the punishment of a charged offense does not punish the offender for the relevant conduct."  United States v. Witte, 25 F.3d 250, 258 (5th Cir. 1994).  In reaching this holding, the Fifth Circuit acknowledged that its conclusion was contrary to other United States Courts of Appeals' opinions, including a Tenth Circuit opinion, that had previously considered this question.  See 25 F.3d at 255 n.19 (citing United States v. Koonce, 945 F.2d 1145 (10th Cir. 1991)).

The Supreme Court granted certiorari to resolve the conflict between the Courts of Appeals and affirmed the Fifth Circuit decision.  See 515 U.S. at 395.  In holding that a district court's consideration of the defendant's relevant conduct did not punish the defendant for that conduct, the Supreme Court concluded that "consideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted."  515 U.S. at 401.  The Supreme Court reasoned that sentencing courts had always considered relevant conduct and "the fact that the sentencing process has become more transparent under the Guidelines . . . does not mean that the defendant is now being punished for uncharged relevant conduct as though it were a distinct criminal offense."  515 U.S. at 402.  Sentencing enhancements do not punish a defendant for uncharged offenses; rather, they reflect Congress' policy judgment "that a particular offense should receive a more serious

sentence within the authorized range if it was either accompanied by or preceded by additional criminal activity."  515 U.S. at 403.

In United States v. Watts, the Supreme Court, in a per curiam opinion, relied upon Witte v. United States and upheld, against a double-jeopardy challenge, a sentencing judge's use of conduct for which the defendant had been acquitted.  See United States v. Watts, 519 U.S. at 149. The Supreme Court noted that its conclusion was in accord with every United States Court of Appeals -- other than the United States Court of Appeals for the Ninth Circuit -- and that each had previously held that a sentencing court may consider conduct for which the defendant had been acquitted, if the government establishes that conduct by a preponderance of the evidence.  See 519 U.S. at 149 (citing, e.g., United States v. Coleman, 947 F.2d 1424, 1428-29 (10th Cir. 1991)).  The Supreme Court began its analysis with 18 U.S.C. § 3661: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  United States v. Watts, 519 U.S. at 151 (quoting 18 U.S.C. § 3661). According to the Supreme Court, 18 U.S.C. § 3661 embodies the codification of "the longstanding principle that sentencing courts have broad discretion to consider various kinds of information" and that "the Guidelines did not alter this aspect of the sentencing court's discretion."  United States v. Watts, 519 U.S. at 151-52.

Tenth Circuit caselaw adheres closely to the Supreme Court's results in Witte v. United States and United States v. Watts.  See United States v. Andrews, 447 F.3d 806, 810 (10th Cir. 2006)(applying Witte v. United States' holding to affirm that a career-offender enhancement does not violate the Fifth Amendment's Double Jeopardy Clause).  In United States v. Banda, 168 F. App'x. 284 (10th Cir. 2006)(unpublished), the Tenth Circuit rejected a defendant's argument that

it was "structural error" for a district court to find sentencing factors "by a preponderance of the evidence rather than the jury applying a beyond-a-reasonable-doubt standard." 168 F. App'x at 290. The Tenth Circuit explained that "'[i]t is now universally accepted that judge-found facts by themselves do not violate the Sixth Amendment. Instead, the constitutional error was the court's reliance on judge-found facts to enhance the defendant's sentence mandatorily.'" 168 F. App'x at 290 (quoting United States v. Lauder, 409 F.3d 1254, 1269 (10th Cir. 2005)).

In United States v. Coleman, the defendant appealed the district court's sentence enhancement for firearms possession after he was convicted of conspiracy to possess and possession of a controlled substance with intent to distribute but was acquitted of using or carrying a firearm during and in relation to a drug trafficking crime. See 947 F.2d at 1428. The Tenth Circuit acknowledged that courts had taken various positions on whether a sentence may be enhanced for firearms possession despite a defendant's acquittal on firearms charges. See 947 F.2d at 1428-29 (citing United States v. Duncan, 918 F.2d 647, 652 (6th Cir. 1990)("[A]n acquittal on a firearms carrying charge leaves ample room for a district court to find by the preponderance of the evidence that the weapon was possessed during the drug offense."); United States v. Rodriguez, 741 F. Supp. 12, 13-14 (D.D.C. 1990)(refusing to apply 2-level enhancement for firearms possession, because "[t]o add at least 27 months to the sentence for a charge of which the defendant was found not guilty violates the constitutional principle of due process and the ban against double jeopardy")).

Without discussion related to the standard of proof a sentencing court should use to make factual findings, the Tenth Circuit held that the district court did not err in enhancing the defendant's sentence for possession of a firearm. See United States v. Coleman, 947 F.2d at 1429. The Tenth Circuit based its conclusion on evidence that: (i) individuals at the arrest scene handled

the weapons at will; (ii) the weapons were handled at will by individuals who lived at the house; and (iii) the weapons were kept for the protection of conspiracy participants and the narcotics involved. See 947 F.2d at 1429. The Tenth Circuit explained that, in reviewing relevant federal case law, it found "persuasive the decisions that have allowed a sentencing court to consider trial evidence that was applicable to a charge upon which the defendant was acquitted." 947 F.2d at 1429.

In United States v. Washington, 11 F.3d at 1510, the defendant argued that the United States needs to prove drug quantities used as relevant conduct to establish a defendant's offense level by clear-and-convincing evidence, rather than by a preponderance of the evidence. See 11 F.3d at 1512. The defendant objected to his sentencing, because the drug quantity that the district court considered as relevant conduct, and which the court found by a preponderance of the evidence, increased his Guidelines sentencing range from 210-262 months to life in prison. See 11 F.3d at 1515. The defendant argued "that because the additional drug quantities effectively resulted in a life sentence a higher standard of proof should be required." 11 F.3d at 1515. Although the Tenth Circuit in United States v. Washington "recognize[d] the strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof," it held that "the Due Process Clause does not require sentencing facts in the ordinary case to be proved by more than a preponderance standard." 11 F.3d at 1516 (citing McMillan v. Pennsylvania, 477 U.S. 79, 84 (1986)). See United States v. Sangiovanni, 2014 WL 4347131, at *22-26 (concluding that a sentencing court can cross reference from the Guidelines that correspond to the defendant's crime of conviction to the Guidelines for another, more harshly punished crime, if it can be established by a preponderance of the evidence that the defendant committed the more serious crime); United States v. Cervantes-Chavez, 2014 WL 6065657, at

*14-15 (D.N.M. 2014)(Browning, J.)(cross-referencing from the guideline for being an illegal alien in possession of a firearm to the drug-possession guideline after finding by a preponderance of the evidence that the defendant committed a drug-possession crime).

The Court previously has held that it may consider a defendant's refusal to answer questions for the PSR, while not drawing an adverse inference from the refusal. See United States v. Goree, 2012 WL 592869, at *11 (D.N.M. 2012)(Browning, J.). The Court has also held that, although it can consider a defendant's silence about information regarding herself or others engaging in criminal conduct, it will not rely on that silence to increase the defendant's sentence. See United States v. Chapman, 2012 WL 257814, at *13 n.5 (D.N.M. 2012)(Browning, J.). Finally, the Court has held that a defendant's "aggression towards other individuals, and the murder he may have attempted to orchestrate while incarcerated" is relevant information which the Court can consider in fashioning a proper sentence. United States v. Romero, 2012 WL 6632493, at *23 (D.N.M. 2012)(Browning, J.). See United States v. Tapia, No. CR 12-3012 JB, 2017 WL 6417610, at *10–15 (D.N.M. Dec. 14, 2017).

## ANALYSIS

The Court sustains the Objection, because the United States has not met its burden to prove, by the preponderance of the evidence, that the $4,000.00 cash the officers seized is attributable to the sale of methamphetamine. "The government has the burden of proving by a preponderance of the evidence any findings necessary to support a sentence enhancement." United States v. Gambino-Zavala, 539 F.3d 1221, 1228 (10th Cir. 2008). At sentencing, under the Guidelines, a district court can convert drug money to its-drug weight equivalent:

> Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. See § 1B1.3(a)(2) (Relevant Conduct). Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled

substance.  In making this determination, the court may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.

U.S.S.G. 2D1.1, cmt. 5.  The table in U.S.S.G. § 2D1.1(c) explains how to convert cash into drugs.

See U.S.S.G. 2D1.1(c).  The Tenth Circuit has clarified that district judges may convert drug proceeds to drug weight under this provision

> "in a case where cash is seized and where either no drug is seized or the amount seized does not reflect the scale of the offense . . . provided the court finds by a preponderance that the cash is attributable to drug sales which were part of the same course of conduct or common scheme or plan as the conviction count."

United States v. Jarvi, 537 F.3d 1256, 1263 (10th Cir. 2008)(quoting United States v. Rios, 22 F.3d 1024, 1028 (10th Cir. 1994)).  See United States v. Hinson, 585 F.3d 1328 (10th Cir. 2009).

In United States v. Rios, for instance, where "[o]fficers seized a total of $46,520.00 in U.S. currency, including $14,920.00 which was discovered in a brown paper bag," and $31,600.00 found in an envelope could be converted to a drug quantity, the Tenth Circuit "conclude[s that] the sentencing court had enough evidence before it to find by a preponderance that the $14,920.00 in the brown paper bag resulted from conduct relevant to Defendant's conviction count" and could be converted into drug quantities.  22 F.3d at 1028.  The Tenth Circuit explains that the $14,920.00 in cash "was the result of Defendant's drug activities because, according to [the Defendant's girlfriend], Defendant had called her and asked her to come pick up the bag from him at the house out of which Defendant conducted his drug sales."  22 F.3d at 1028.  The Tenth Circuit also concluded that the $31,600.00 could be attributed to drug sales, because the "Defendant had no other apparent source for that kind of income and [because the] Defendant had access to a drug trade extensive enough to earn large sums of money, which is apparent from the $14,920.00 that [his girlfriend] picked up from the drug house."  United States v. Rios, 22 F.3d at 1029.

In contrast, United States Court of Appeals for the Sixth Circuit held that the district court

erred in attributing cash to drug sales, because "the Government failed to show by a preponderance of the evidence that the money was connected to the purchase or sale of cocaine base other than the cocaine base found in Defendant's car."  United States v. Sandridge, 385 F.3d 1032, 1037 (6th Cir. 2004).  The Sixth Circuit explains:

> [T]he $919 in cash cannot be used as a proxy for an additional quantity of cocaine base above and beyond the quantity found in Defendant's car unless a preponderance of the evidence shows that the cash was either proceeds from other cocaine base that was just sold or money to purchase additional cocaine base. Moreover, in this case, a preponderance of the evidence would have to show that the money represented proceeds from or money to purchase cocaine base, as opposed to some other drug, such as marijuana, which was also found in Defendant's car.
>
> At the sentencing hearing, the Government presented no witnesses and entered no documents into evidence; it relied entirely on the information in the PSR and asked the district court to do the same. Defendant only pleaded guilty to possessing with intent to distribute the 20.9 grams of cocaine base found in his car; there was no allocution by [the Defendant] -- in either the plea agreement or at sentencing -- concerning the purpose of the cash. Accordingly, the information relied on by the district court -- i.e. that Defendant had no legitimate source of income in the years prior to his arrest and that he had a history of prior drug arrests -- could suggest, at most, that Defendant was engaged in drug dealing, which he acknowledged in his guilty plea.  But those facts shed no light on the question of whether the $919 was related to cocaine base other than the cocaine base found in Defendant's car.
>
> . . . .
>
> There was also no evidence -- and no explicit finding by the district judge --that the drugs found in Defendant's car did not represent the full scale of the offense, as required by U.S.S.G. § 2D1.1, commentary, applic. note 12. In addition, no evidence was presented to show that the cash was related to the sale of cocaine base, as opposed to marijuana, the other drug found in Sandridge's car

United States v. Sandridge, 385 F.3d at 1038.

Here, the officers found 12.2 grams of methamphetamine and $4,000.00 in cash in Garcia-Garcia's vehicle, along with a firearm; ammunition, unknown pills; a scale; 150 small plastic baggies; 1.9 grams of marijuana in the backseat; three driver's licenses; two social security cards; and two cellular phones.  See PSR ¶¶ 15-16, at 6.  Under the Guidelines conversion table, 12.2

grams of methamphetamine -- the amount found in Garcia-Garcia's vehicle -- equates to a base offense level of 16, see U.S.S.G. § 2D1.1(c)(12), and 88.86 grams of methamphetamine -- the amount found in Garcia-Garcia's vehicle plus the converted $4,000.00 -- equates to a base offense level of 30, see U.S.S.G. § 2D1.1(c)(5). The USPO states, without citation to the PSR, that "case agents believe the money seized was likely obtained through drug sales." PSR Add. II at 1.[5]

Without additional facts, which the United States admits that it cannot and will not provide, see Objection at 3 (admitting that the "United States is not in possession of evidence sufficient to support a finding that the cash located on Defendant at the time of his arrest is attributable to drug sales of methamphetamine"), the Court concludes, on the record before it, by the preponderance of the evidence, that it cannot link the cash to the sale methamphetamine. The Court agrees with the United States that the preponderance of the evidence does not show "that the cash located in the vehicle was obtained via illicit means, much less that it was obtained from the trafficking of methamphetamine." Objection at 3. Although tools of the drug sales -- a scale and baggies -- were found in his vehicle, see PSR ¶¶ 15-16, at 6, the record does not show that Garcia-Garcia has ever sold drugs, see PSR ¶¶ 1-55, at 2-12; PSR ¶ 44, at 10 (listing only one other drug related offense from 2014 for possession of a small amount of cocaine). Unlike United States v. Rios, 22 F.3d at 1028, there is no temporal connection between the cash and extensive drug sales, because here there is no record that Garcia-Garcia ever sold drugs, see PSR ¶¶ 1-55, at 2-12. That Garcia-Garcia pleaded guilty here to the possession with intent to distribute methamphetamine, see Plea

---

[5]Although the USPO suggests that Court should enhance his sentence, see PSR Add. II at 1-2, Garcia-Garcia has not filed any briefing with the Court explaining why his sentence should not be enhanced or why the USPO is mistaken in applying U.S.S.G. § 2D1.1(a)(5). See Sentencing Memorandum at 2 (stating only, before the United States filed its Objection and before the USPO filed its PSR Addendums, that the United States "has correctly assessed the evidence and legal issues in this case . . .").

at 1 (admitting: "I intended to distribute the methamphetamine. Specifically, I intended to deliver and transfer possession of the methamphetamine other persons for financial gain."), does not show that he has sold drugs now or in the past or that the $4,000.00 was from a drug sale, only that he was planning to do so.

Consequently, Garcia-Garcia's situation is similar to the defendant in United States v. Sandridge, where officers found with $919 cash on the defendant, and 20.9 grams of cocaine base, scales, and marijuana in his car. See 385 F.3d at 1034. The Sixth Circuit held that the district court erred in attributing the cash to cocaine base, because the United States did not have any evidence connecting the cash "to cocaine base other than the cocaine base found in Defendant's car," even though the defendant: (i) had pled guilty to possessing with the intent to distribute cocaine base; (ii) had dealt drugs in the past; and (iii) had no "legitimate source of income." United States v. Sandridge, 385 F.3d at 1038. The Sixth Circuit noted also that United States did not meet its burden to explain why the cash should be linked to the cocaine base rather than the marijuana officers found in defendant's car. See United States v. Sandridge, 385 F.3d at 1038. Here to, there is no evidence linking the $4,000.00 in cash the officers found in the glove compartment to methamphetamine other than a temporal and physical inference that a large quantity of cash found in the same vehicle as methamphetamine necessarily implies the cash came from the sale of methamphetamine. Even if the Court were to attribute the $4,000.00 in cash to drug sales given presence of the baggies and scale, but see United States v. Sandridge, 385 F.3d at 1038 (discounting the presence of scale), the Court does not to see how it could partition that money between the methamphetamine, marijuana, and other pills found in the vehicle, see United States v. Sandridge, 385 F.3d at 1038 (noting that "a preponderance of the evidence would have to show that the money represented proceeds from or money to purchase cocaine base, as opposed to some

other drug, such as marijuana, which was also found in Defendant's car").   And, unlike the defendants in United States v. Rios, 22 F.3d at 1029, and United States v. Sandridge, 385 F.3d at 1038, Garcia-Garcia has no history of selling drugs.   The USPO suggests all the cash should be linked to sale of methamphetamine, which carries the highest sentencing consequences, but does not explain sufficiently why it comes to that conclusion.   See PSR Add. II at 1-2.   Because there is no evidence showing that Garcia-Garcia sold drugs in the past or had sold methamphetamine recently, the Court cannot attribute the $4,000.00 in cash to methamphetamine.

Further, even though Garcia-Garcia gives no reason for having $4,000.00 in cash, he was employed at a full time job at the time of his arrest, see PSR ¶ 59, at 13 (stating the Garcia-Garcia was working forty hours a week as a construction worker earning $15.00 an hour at the time he was arrested); PSR ¶¶ 60-62, at 13-14 (stating that Garcia-Garcia has been employed full time since January 1, 2014), and had recently sold a truck, see PSR ¶ 18, at 7 ("The defendant stated he had sold the truck to an individual identified as Jesse Hernandez . . .."), which could explain why he had cash on hand, see United States v. Rios, 22 F.3d at 1029 ("The court's finding that the money came from drugs was supported by the fact that Defendant had no other apparent source for that kind of income . . . ."); United States v. Bush, No. 18-20025-01-DDC, 2021 WL 1564593, at *25 (D. Kan. April 21, 2021)(Crabtree, J.)(considering the defendant's employment history). Cf. United States v. Cervantes-Chavez, 59 F. Supp. 3d 1295, 1318 (D.N.M. 2014)(Browning, J.)(attributing $19,6520.00 in cash found stored near seventy-five pounds of marijuana to drugs sales, because the defendant "has advanced no alternative, licit reason for having that much cash, nor can the Court conceive of any such reason; . . . and because [the defendant] was actively engaging in a large-quantity drug transaction when he was apprehended . . .").   See also United States v. Sandridge, 385 F.3d at 1038 (concluding that it was an error to attribute cash to drugs

even when the defendant did not offer an explanation for the drugs).

Accordingly, the record before the Court, in addition to the United States' position that it cannot prove the cash was obtained illicitly, does not give the Court confidence that the preponderance of the evidence suggests that the Court can attribute the $4,000.00 in cash to the sale of methamphetamine.  See U.S.S.G. § 2D1.1(a)(5); United States v. Jarvi, 537 F.3d at 1263; United States v. Sandridge, 385 F.3d at 1038.   The Court, therefore, will not covert the $4,000.00 cash to 66.66 grams of methamphetamine.  Garcia-Garcia's base offense level, therefore, is 16, because, under the Guideline's drug conversion table, 12.2 grams of methamphetamine converts to a base offense level of 16.  See U.S.S.G. § 2D1.1(a)(5), (c)(12)(stating that "[a]t least 10 G but less than 20 G of Methamphetamine" converts to a base level of 16).

**IT IS ORDERED** that the Objection in the United States' Sentencing Memorandum Synopsis, filed January 7, 2021 (Doc. 31), is sustained.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Fred J. Federici
    Acting United States Attorney
Nicholas Scott Mote
    Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

        _Attorneys for the Plaintiff_

Joe M. Romero, Jr.
Romero & Winder, PC
Albuquerque, New Mexico

        _Attorney for the Defendant_